# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**NASSIR M. HAMED,**

      **Plaintiff,**

**v.**

**THE CITY OF BELLEVILLE, ILLINOIS,**
**An Illinois Municipal Corporation,**

      **Defendant.**                       **Case No. 09-cv-718-DRH**

## <u>ORDER</u>

**HERNDON, Chief Judge:**

### I.  <u>Introduction</u>

       The following account is as alleged by Plaintiff Nassir Hamed.  In April 2008, Plaintiff purchased property located at 530 North Douglas Avenue in Belleville, Illinois (the "Property").  A building is located on the Property (the "Building"). Plaintiff made this purchase with the intent of operating a local convenience or grocery store.[1]  Early the following year, in January 2009, Plaintiff began renovations on the Building so that he could begin operating it as a store.  As required, Plaintiff applied for an was issued a permit by defendant the City of Belleville ("Belleville" or the "City") for commercial utilities, pursuant to a building permit.  Also that month, Plaintiff met with a City Building Inspector and informed him of his intentions

---

[1]  Plaintiff alleges that the Property sat vacant for over ten years prior to his purchasing it.

regarding the opening of a convenience or grocery store on the Property.  The City Building Inspector allowed construction to continue to renovate the Property.  Three months later, after substantial renovations had been completed and much to Plaintiff's surprise, the same City Building Inspector informed Plaintiff that the Property was actually zoned residential.  In fact, although Plaintiff alleges the Property was originally zoned commercial, it was re-zoned as single-family residential in February 2000.[2]  The City had, however, continued to tax the Property at a higher rate for commercial property each year following its re-zoning as residential.

After discovering that the Property was not zoned commercial, Plaintiff promptly filed an Application for Use Variance (the "Application") with the City.  Although the City's Zoning Board of Appeals recommended that Plaintiff's variance be granted, the City Council ultimately denied his Application.  Plaintiff thereafter filed the instant lawsuit.  His Complaint (Doc. 1), consists of the following six counts:[3] Count I - Inverse Condemnation; Count II - Denial of Equal Protection; Count III - Denial of Due Process; Count IV - § 1983 Civil Rights Violation; Count V -Appeal Pursuant to the Administrative Procedure Act ("APA"), **65 ILL. COMP. STAT. 5/11-13-13**, and Count VII - a claim for Declaratory Judgment.  Plaintiff alleges

---

[2]  Zoning reclassification for the Property was adopted as signified by City of Belleville Ordinance #6082 (Doc. 2 - Complaint, ¶ 7).  Plaintiff further alleges that the Property and the Building are "unfit to serve as a residence" (*Id*. at ¶ 6).

[3]  The sixth count in Plaintiff's Complaint is actually mislabeled as "Count VII."  The Court will continue to refer to it as "Count VII," but acknowledges that there is no actual Count VI, for purposes of clarification to the reader.

jurisdiction based on federal question jurisdiction, 28 U.S.C. § 1331, as well as seeks the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 for his state law claims.

Defendant has filed a Motion to Dismiss (Doc. 16), pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)** and **12(b)(6)**. Overall, Defendant argues that Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted, as Plaintiff's claims are not yet "ripe" for adjudication in this Court. In addition to the ripeness argument, Defendant also bases its Motion on several grounds: Plaintiff's inverse condemnation claim in Count I and his declaratory judgment claim in Count VII each fail to invoke federal jurisdiction; Plaintiff has not sufficiently plead a claim for denial of equal protection in Count II or for denial of due process in Counts III or IV; and Plaintiff's APA appeal in Count V fails because is actually a prerequisite to filing the instant suit. Plaintiff has filed a timely Response (Doc. 20) opposing Defendant's arguments. Upon review of the Parties' arguments and the law applicable to the issues, as the Court will further elaborate in its discussion, it finds only Plaintiff's equal protection claims to be properly before it.

## II.  Legal Standard

**A.     Rule 12(b)(1)**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) allows a party to raise as a defense a federal court's lack of subject matter jurisdiction over a plaintiff's claims. FED. R. CIV. P. 12(b)(1).  When a defendant makes this challenge, the plaintiff bears the burden of establishing jurisdiction.  The Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citation omitted).  Yet, if necessary, the Court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject matter jurisdiction exists.  *Id.* (citations omitted).

**B.     Rule 12(b)(6)**

When ruling on a motion to dismiss for failure to state a claim under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), the Court must look to the complaint to determine whether it satisfies the threshold pleading requirements under FEDERAL RULE OF CIVIL PROCEDURE 8.  Rule 8 states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court held that Rule 8 requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

**(2007)**.  In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [by providing] more than labels and conclusions, [because] a formulaic recitation of the elements of a cause of action will not do . . . ."  ***Id.* at 555-56 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  ***Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557)**.

Recently, in ***Iqbal***, the Supreme Court made clear that the federal pleading standard under Rule 8 as discussed in its ***Twombly*** opinion applies "for all civil actions."  ***Id.* at ---, 129 S. Ct. at 1953**.  ***Iqbal*** identified the "two working principles" underlying the decision in ***Twombly***: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss."  ***Id.* at ---, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555-56)**.  In short, a court should only assume to be true a complaint's well-pleaded factual allegations, and not its mere legal conclusions, when determining whether such allegations plausibly give rise to relief.  ***Id.* at ---, 129 S. Ct. at 1950**.

### III.  Discussion

**A.     Subject Matter Jurisdiction**

Defendant first argues that Plaintiff's Complaint should be dismissed in its entirety for lack of subject matter jurisdiction because it is not ripe for adjudication (Doc. 16, pp. 4-6).  Plaintiff's inverse condemnation claim in Count I alleges that Defendant's denial of his application for a use variance to operate his Property as a convenience or grocery store amounted to an unconstitutional takings of his property for which he was not justly compensated.  The remaining counts all stem from this denial of his variance application.

Claims must be ripe for adjudication in order " 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' "  ***Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967))**.  The ripeness doctrine stems from Article III of the Constitution which limits federal court jurisdiction to "cases or controversies," and prohibits federal courts from issuing advisory opinions, ***Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) (citation omitted)**, as well as prudential reasoning that a court may employ in refusing to exercise jurisdiction.  ***Nat'l Park*, 538 U.S. at 808 (citing *Reno v. Catholic Social Serv.*,**

***Inc.***, 509 U.S. 43, 57, n.18 (1993) (citations omitted)).

The Supreme Court has long ago decided that in land use cases "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." ***Williamson County Regional Planning Commission v. Hamilton Bank***, 473 U.S. 172, 186 (1985). As the Seventh Circuit recognized, the rationale behind ***Williamson County*** turned on the fact that " '[t]he Fifth Amendment does not proscribe the taking of property; it proscribes the taking of property *without just compensation*.' " ***Flying J, Inc. v. City of New Haven***, 549 F.3d 538, 543 (7th Cir. 2008) (quoting ***Williamson County***, 473 U.S. at 194) (emphasis added). In other words, no constitutional violation has actually occurred until a plaintiff can demonstrate that just compensation has been denied. ***Williamson County***, 473 U.S. at 195 n.13. Therefore, a two-part inquiry was developed as to whether such land use takings claims were ripe for federal adjudication: (1) the plaintiff must have received a final decision made by the relevant government agency; and (2) the plaintiff must have sought compensation through applicable state procedures and been denied just compensation. ***Forseth v. Village of Sussex***, 199 F.3d 363, 372 (7th Cir. 2000) (citing ***Williamson County***, 473 U.S. at 186-87, 194). The same can be applied to land use takings claims guised as violations of the due process clause of the Fourteenth Amendment, which "has been interpreted, through

absorption of the takings clause of the Fifth Amendment, to entitle a landowner to just compensation if a state or one of its subdivisions takes his land." ***Gamble v. Eau Claire County***, **5 F.3d 285, 285-86(7th Cir. 1993) (citations omitted)**. The ***Williamson County*** ripeness requirement usually holds whether the takings claim is labeled as a "substantive due process" or "procedural due process" claim. ***Flying J***, **549 F.3d at 543 (citing** ***Forseth***, **199 F.3d at 368);** ***see also River Park, Inc. v. City of Highland Park***, **23 F.3d 164, 167 (7th Cir. 1994) (citing** ***Gamble***, **5 F.3d at 287-88)**.

Here, Defendant argues that because Plaintiff has failed to exhaust his state law remedies, his entire suit should be dismissed as it is not yet ripe for adjudication in federal court.  In response, Plaintiff attempts to distinguish his case from the facts of ***Williamson County***, arguing that unlike the plaintiffs in that case, here he actually did apply for a use variance and it was denied.   Thus, Plaintiff asserts that because the denial of his request for a variance amounted to a decision at the "final level of administrative appeal," his claims are ripe (Doc. 20, pp. 2-3). While Plaintiff may be correct in one respect, his argument fails to consider the second prong of the ripeness requirement as set forth in ***Williamson County*** and applied by its progeny: that Plaintiff has sought compensation through applicable procedures available in Illinois (the situs state forum) and has been denied just compensation.  Illinois provides the judicially recognized remedy arising out of the self-executing takings provision of the Illinois Constitution, known as an inverse

condemnation action.  **See *Peters v. Village of Clifton*, 498 F.3d 727, 733 (7th Cir. 2007) (citing Illinois Const. Art. 1, § 15; *Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1284-85 (7th Cir. 1993); *Roe v. Cook County*, 193 N.E. 472, 474 (Ill. 1934)).**

An inverse condemnation claim is exactly what Plaintiff has alleged in Count I of his Complaint.  Further, Plaintiff has not offered any showing that he has previously pursued this claim in state court to a less than satisfactory outcome.  His attempt to explain that his Count I alleges both a federal takings clause action and a state inverse condemnation claim misses the point made by ***Williamson County*** that such actions need to first be brought in state court.  As Judge Easterbrook stated in ***River Park***:

> Federal Courts are not boards of zoning appeals.  This message, oft-repeated, has not penetrated the consciousness of property owners who believe that federal judges are more hospitable to their claims than are state judges.  Why they should believe this we haven't a clue; none has ever prevailed in this circuit, but state courts often afford relief on facts that do not support a federal claim.  Is it that they have omitted the steps necessary to obtain review in state court and hope for the best in a second-chance forum?  Well, we are not cooperating.  Litigants who neglect or disdain their state remedies are out of court, period.

***River Park***, 23 F.3d at 165.

This Court can word it no better than that.  As such, it finds Plaintiff's takings claims, whether labeled as a Fifth Amendment takings claim, a state inverse condemnation claim, or a due process, are not ripe for adjudication and therefore

must be dismissed.   Accordingly, Counts I, III, V and VII[4] must be dismissed, because they are all part and parcel of a takings issue not yet ripe for adjudication with this Court.   The Court need not consider Defendant's further arguments pertaining to these Counts.

**B.     Equal Protection**

A plaintiff's claims for denial of equal protection arising out of land use cases are generally not subject to the ***Williamson County*** ripeness requirements. **See *Hagar v. City of West Peoria*, 84 F.3d 865, 870 n.3 (7th Cir. 1996); *see also Forseth*, 199 F.3d at 370 (citing *Hagar*, 84 F.3d at 870)**.   If a plaintiff, however, is not alleging to be a member of a suspect class or that a fundamental right is at stake, then it must be shown that the " 'governmental action [is] wholly impossible to relate to legitimate governmental objectiveness.' " ***Forseth*, 199 F.3d at 371 (citations omitted)**.   These types of equal protection claims typically belong in one of two categories: (1) a government agent has acted in a malicious and spiteful manner against the plaintiff in an effort to "get" him "for reasons unrelated to any legitimate state objective;" or (2) a plaintiff's claim would essentially "evaporate" should the government agency suddenly treat everyone equally.   ***Hagar*, 84 F.3d at 870; *Flying J*, 549 F.3d at 543**.   Of course, when a plaintiff claims to be a member of a protected class either by race, national origin or otherwise, any unequal treatment warrants that the governmental action be necessary to serve a compelling

---

[4]  Count VII seeks a declaratory judgment, but such relief would be premature, given that the issues upon which Plaintiff seeks a declaration are not yet ripe.

government interest and must be narrowly tailored to further that interest. ***See City of Cleburne, Tex. v. Cleburne Living Ctr.***, 473 U.S. 432, 440 (1985); ***see also Hagar***, 84 F.3d at 872 (citing ***Esmail v. Macrane***, 53 F.3d 176, 178 (7th Cir. 1995)).

Defendant argues that Plaintiff's denial of equal protection claim pled in Count II of his Complaint should also be dismissed for failure to state a claim upon which relief can be granted, based on the grounds that he has failed to plead a comparative individual to establish disparate treatment (Doc. 16, pp. 8-9). Defendant further argues that notwithstanding this pleading deficiency, Plaintiff's allegations of denial of equal protection also, in and of themselves, "fall short of the mark" (*Id*. at 9-10). Defendant believes Plaintiff is pleading a "class of one" theory, which requires showing that "1) the defendant intentionally treated the plaintiff differently than others who are similarly situated; and 2) there is no rational basis for the different treatment or the cause of the different treatment is based on the defendant's totally illegitimate animus towards the plaintiff" (*Id*. at 8-9). Moreover, Defendant states that an equal protection claim based on a class of one theory requires a plaintiff to show he was similarly situated to other individuals, and that Plaintiff in this case has failed to identify a specific similarly situated individual (*Id*. at 9).

Plaintiff argues that Defendant's classification of his equal protection claim based on a "class of one" is incorrect – rather, Plaintiff alleges Defendant dealt

with his zoning variance application in a manner inconsistent with its normal procedures, due to his national origin and race (Doc. 20, pp. 4-5).  Therefore, because equal protection claims based on national origin and race are subject to strict scrutiny, Defendant's argument for dismissal for Plaintiff's failure to allege a similarly situated individual is irrelevant.  In addition, Plaintiff points out the fact that he has alleged not one, but two equal protection claims – Count II and also Count IV of his complaint which alleges a **42 U.S.C. § 1983** civil rights claim, encompassing each of his constitutional deprivation claims as plead in Counts II (Equal Protection) and Count III (Due Process).

    The Court finds Plaintiff to be correct, in part.  Reviewing the allegations of Plaintiff's claim for denial of equal protection under the Fourteenth Amendment in Count II, he does not appear to be alleging a "class of one" theory as Defendant argues.  However, he also does not allege that he was denied equal protection on the basis of his national origin or race.  In fact, Count II does not include any allegations of national origin or race either in the paragraphs explicitly contained within Count II or in the preceding paragraphs of his Complaint, incorporated by reference thereto (*see* Doc. 2 - Comp., ¶¶ 1-34).  In Count IV of Plaintiff's Complaint, he does allege that he is of Middle Eastern descent (*see* Doc. 2, ¶ 45), but this will not suffice to consider it also part of Plaintiff's Count II, given that it was not incorporated by reference.  Whether this was an oversight or deliberate omission is neither here nor there, the fact remains that the Court must give effect to the allegations as Plaintiff has stated them.

Getting back to the matter at hand regarding the equal protection claim in Count II, given that the Court must construe the pleadings in the light most favorable to the non-movant under Rule 12 and determine whether Plaintiff has stated a plausible claim for relief, the Court finds that even absent an allegation of national origin or race, Plaintiff's claim survives at this juncture.  More specifically, it appears that Plaintiff's claim falls under the category recognized by the Seventh Circuit: where actions taken by the state, whether it be a denial of a variance or otherwise, were merely a spiteful effort to "get" Plaintiff for reasons wholly unrelated to any legitimate state objective."  **See Esmail, 53 F.3d at 180; see also Flying J, 549 F.3d at 543 (citing Forseth, 199 F.3d at 370)**.  For example, in Count II Plaintiff alleges: Defendant failed to invite him to meetings it attended, scheduled by individuals opposed to his variance application (Doc. 2, ¶ 26); Defendant failed to attend a neighborhood meeting open to the community at which Plaintiff was heard (*Id*. at ¶ 27); Defendant entered citizen petitions into the record which were unrelated to Plaintiff's variance application and cited these petitions as grounds for denial of his variance (*Id*. at ¶¶ 28-29); Defendant ran a criminal background check on Plaintiff, which it does not typically do for applicants (*Id*. at ¶¶ 30, 32); Defendant reviewed newspapers articles regarding terrorist links of people of Palestinian descent (*Id*. at ¶ 31);[5] and Defendant generally reviewed the facts related to Plaintiff's

---

[5]  This also will not suffice as an allegation of Plaintiff's national origin or race.  While it implies that Plaintiff is of either Palestinian or Middle Eastern descent, the Court cannot merely assume it to be true.

variance application in an inconsistent manner and without applying standards equally or consistently with similar applications for use variances (*Id*. at ¶ 34). Giving the allegations of Count II a construction in the light most favorable to Plaintiff, it appears he may be alleging that Defendant was merely out to "get" him by denying his variance application.

With regard to Plaintiff's equal protection claim brought pursuant to § 1983, in which he does allege that he is a member of a protected class, being of Middle Eastern descent, the Court finds this claim must also survive dismissal.[6] Defendant has not even addressed reasons for dismissing his equal protection claim in Count IV. Moreover, the reasons Defendant asserted for dismissal regarding Count II will not convince the Court that the § 1983 claim based on a denial of equal protection in Count IV should be dismissed. Here, because Plaintiff has alleged denial of equal protection on the basis of national origin or race, Defendant's actions in denying his variance must be narrowly tailored to serve a compelling governmental interest. Defendant has not offered any rationale for its denial of Plaintiff's variance in its Motion to Dismiss. Therefore, the Court finds that Plaintiff's equal protection claims in Counts II and IV survive dismissal.

---

[6] Plaintiff's remaining allegations regarding his denial of equal protection in Count IV are otherwise similar to his allegations in Count II, described previously in this Order.

### IV.  Conclusion

For the reasons discussed herein, Defendant's Motion to Dismiss (Doc. 16) is hereby **GRANTED IN PART AND DENIED IN PART**.  Finding that Plaintiff's land use claims and those related thereto are not yet ripe under the requirements of *Williamson County* because Plaintiff has failed to pursue his state remedies – in other words, he cannot yet show he has been denied just compensation – the following counts must be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction: Count I – Inverse Condemnation; Count III - Denial of Due Process; Count IV - § 1983 - Violation of Plaintiff's Due Process Rights; Count V - Appeal Pursuant to the APA; and Count VII - Declaratory Judgment.  Therefore, the remaining two counts survive dismissal: Count II - Denial of Equal Protection (claim brought pursuant to the Fourteenth Amendment); and Count IV - Denial Equal Protection (claim brought pursuant to 42 U.S.C. § 1983).

Additionally, the Court hereby **ALLOWS** Plaintiff leave to file an Amendment to his Complaint, if he so chooses, in order to allege in Count II of his Complaint, that he is a member of a protected class based on his national origin or race (as he has already alleged in paragraph 45 of Count IV).  Plaintiff shall file said Amended Complaint within fourteen (14) days of the date this Order.  Lastly, should Plaintiff so choose to amend his Complaint as described above, Defendant is also **ALLOWED** leave to file an Amended Motion for Summary Judgment (as the Court notes Defendant has a pending summary judgment motion) to address Plaintiff's

equal protection claims on the basis that he is a member of a protected class.

Defendant shall file said Amended Motion for Summary Judgment, if it so chooses,

no later than fourteen (14) days after Plaintiff files his Amended Complaint.

**IT IS SO ORDERED**.

Signed this 23rd day of August, 2010.

/s/     David R Herndon

**Chief Judge**
**United States District Court**